

Dated: March 23 2023

Mary Ann Whipple
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No.: 21-32107 |
| | ) | |
| Kristina Marie DeVries | ) | Chapter 7 |
| | ) | |
| | ) | |
| Debtor(s). | ) | Hon. Mary Ann Whipple |

**MEMORANDUM OF DECISION SUSTAINING OBJECTIONS TO EXEMPTIONS**

This matter is before the court on the Trustee's Objections to Debtor's Claim of Exemptions regarding a 2017 BMWi3 and Heritage Group Retirement (Checking Account) [Doc. ## 14, 47], Debtor's Response to Trustee's Objection to Exemptions [Doc. # 18], Joint Statement of Facts and Stipulations [Doc. # 32], and the Trustee's Brief in Support of his Objection to Debtor's Claim of Exemption in a Motor Vehicle [Doc. # 36].

The district court has original and exclusive jurisdiction over this Chapter 7 case pursuant to 28 U.S.C. § 1334(a) as a case under Title 11, as well as over proceedings arising in this case pursuant to 28 U.S.C. § 1334(b). The case and all proceedings arising in it have been referred to this court by the district court under its general order of reference. 28 U.S.C. § 157(a); General Order 2012-7 of the United States District Court for the Northern District of Ohio. The issue raised by the Trustee's Objections is a core proceeding that this court may hear and determine because it involves the allowance or disallowance of exemptions from property of the estate. 28 U.S.C. § 157(b)(1), (2)(B) and (O).

# I. PROCEDURAL BACKGROUND

Debtor filed her voluntary petition for relief under Chapter 7 on December 20, 2021. [Doc. # 1]. She did not claim any exemption on original Schedule C for her 2017 BMWi3 ("BMW") or her Heritage Group Retirement Account (Checking Account) ("Heritage Account"). [Doc. # 1, p. 15/55].

Debtor filed Amended Schedules A/B and C, in which she claimed exemptions in the BMW under Ohio Rev. Code[1] § 2329.66(A)(2) and (A)(10)(c), (e) and in the Heritage Account also under 2329.66(A)(10)(c), (e). [Doc. # 9, p. 8/12]. On March 12, 2022, the Chapter 7 Trustee filed an objection to the exemptions Debtor claimed on her amended Schedule C regarding the BMW and Heritage Account, [Doc. # 14], to which Debtor responded, [Doc. # 18]. On April 5, 2022, the court held a hearing on the Trustee's objection at which the parties agreed to schedule a Rule 2004 examination of Debtor. [Doc. # 25]. The court continued the matter for further hearing. [*Id*.].

On April 21, 2022, Debtor filed more amendments to her Schedules A/B and C and Statement of Financial Affairs. [Doc. # 31]. However, the exemptions claimed in the BMW and the Heritage Account were the same as those claimed in the first set of amendments, to which the Trustee had already timely objected.

Before the further hearing, the parties filed their Joint Statement of Facts and Stipulations ("Stipulations") regarding the exemption dispute. [Doc. # 32]. The Trustee agreed in the Stipulations that his objection to Debtor's exemptions in the Heritage Account would be treated as withdrawn and that he did not object to Debtor's exemption in the BMW claimed under R.C. 2329.66(A)(2). As a result of the Stipulations, the remaining dispute was whether Debtor is entitled to exempt the BMW under R.C. 2329.66(A)(10)(c) or (e).

The court held the further hearing on the Trustee's objection. There being no facts in dispute, the court decided that the objection as a contested matter would be decided subject to the Rule 56 summary judgment standard as applicable under Bankruptcy Rules 9014(c) and 7056. The court afforded the parties an opportunity to file additional memoranda of law, [Doc. # 34], and the Trustee filed a further brief in support of his objection, [Doc. # 36].

As the court considered the matter, a question arose from the record whether Debtor was claiming an exemption in the car under a third subsection of R.C. 2329.66(A)(10), specifically under R.C. 2329.66(A)(10)(b). It was not claimed on her original Schedule C, [Doc. # 1, p.15/55], or on her first or second amended schedules. But the Trustee's brief discussed application of R.C.

---
[1] Hereinafter referred to as R.C.

21-32107-maw    Doc 64    FILED 03/23/23    ENTERED 03/23/23 16:52:05    Page 2 of 16

2329.66(A)(10)(b), on the theory that it was arguably applicable, and that Debtor could always amend her Schedule C to claim it. 11 U.S.C. § 522(b)(1), Fed. R. Bankr. P. 4003(a). *See* Fed. R. Bankr. P. 1009(a) ("A…schedule…may be amended by the debtor as a matter of course at any time before the case is closed."). An advisory opinion being improper, the court set a further status hearing to clarify the record and what was in dispute. [Doc. # 42].

In advance of that hearing, Debtor filed another amended Schedule C in which she formally claimed R.C. 2329.66(A)(10)(b) as an additional statutory basis for exemption of the BMW. [Doc. # 44, p. 10/13].[2] The Trustee timely objected to the new exemptions claimed in Debtor's latest amended Schedule C. The court set his latest objection for hearing, to occur on the same date already set for the further status hearing on the prior objection. [Doc. # 48].

At the hearings held on the Trustee's pending objections, the court and the parties clarified that the Stipulations applied equally to the newly claimed exemption in the BMW under R.C. 2329.66(A)(10)(b) and that no further factual record or legal arguments were necessary.

## II. SUMMARY JUDGMENT STANDARD AND STIPULATED FACTS

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable to this contested matter by Federal Rules of Bankruptcy Procedure 9014(c) and 7056, summary judgment is only proper where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In reviewing a motion for summary judgment, however, all inferences "must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-88 (1986); *Rose v. State Farm Fire & Cas. Co.*, 766 F.3d 532, 535 (6th Cir. 2014). As a result of the Stipulations, there are no genuine issues of material fact underpinning the dispute. The court will decide as a matter of law whether Debtor is entitled to exempt her interest in the BMW under R.C. 2329.66(A)(10)(b), (c) or (e).

**A. Facts**

In their Joint Statement of Facts, the parties set forth the following "Agreed Facts":

1. The Debtor filed her Chapter 7 petition on December 20, 2020.[3] Douglas Dymarkowski was appointed as the Interim Trustee.

---

[2] Debtor also listed on her Schedule A/B as amended on January 18, 2023, an interest in certain real property proceeds arising by inheritance, [Doc. # 44, p. 8/13, Part 4, Q. 32], which she in turn claimed as exempt in the accompanying amended Schedule C, [*Id.* p. 10-11/13]. The Trustee has timely objected to exemption of the real estate proceeds, [Doc. # 47], but that dispute is not ripe and has been continued for further proceedings as the property at issue is being sold and the amount at issue determined. [Doc. # 62].

[3] The court takes judicial notice of the contents of its case docket. Fed. R. Bankr. P. 9017; Fed. R. Evid. 201(b)(2); *In re Calder*, 907 F.2d 953, 955 n.2 (10th Cir. 1990); *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169,

2. The Debtor, by amendment filed February 9, 2022, claimed exemptions in 2017 BMW i3 pursuant to 11 U.S.C. Sections 2329.66(A)(2) and 11 U.S.C. Section 2329.66(A)(10)(c)(e).[4]

3. On the date of filing, the Debtor owned two (2) motor vehicles, a 2012 Mini Cooper and a 2017 BMW i3 with no value provided for the Mini Cooper and $20,350.00 listed as the value of the BMW. Debtor has indicated that she would surrender the Mini Cooper to the Trustee.

4. On March 12, 2022, the Trustee filed his objection to the Debtor's exemption under 2329.66(A)(10(c)(e) on the 2017 BMW and the Heritage Retirement account(checking).

5. On or about December 14, 2020, the Debtor withdrew $25,000.00 from her Heritage Group 401(k), transferring $2,500.00 of the funds to pay the estimated IRS liability from the withdrawal. Debtor received a check from Heritage Group 401K in the amount of $22,500.00, which she deposited to her Key Bank Checking account on December 21, 2020.

6. On December 22, 2020, Debtor withdrew $19,508.00 from her Key Bank checking Account for the purchase of the 2017 BMW, receiving title to the vehicle on December 31, 2020.

7. Between December 21, 2020 and December 22, 2020, debtor made 3 other withdrawals from her Key Bank Check account totaling $88.47.

8. The Debtor is a 41-year old female with steady employment as a lab technician with one child residing with her.

9. Debtor needed a reliable motor vehicle in order to maintain her steady employment as a lab technician.

10. Pursuant to examination under Rule 2004 the Debtor stated that she is in good health and has no intention of retiring.

---

1171-72 (10th Cir. 1979) (stating that judicial notice is particularly applicable to the court's own records of litigation closely related to the case before it); *United States v. Brugnara*, 856 F.3d 1198, 1209 (9th Cir. 2017) (stating that district court may properly take judicial notice of its own records).

The parties stipulated that Debtor filed her Chapter 7 petition on December 7, 2020. This an incorrect date, off by a year. According to the court's docket, Debtor's Chapter 7 Petition was filed on December 20, 2021. This is the date that the court will use in its decision. If the funds were not withdrawn or the car not acquired until after the case was filed, the Trustee generally has no basis to argue that the car is property of the estate, exempt or not. It matters that the other stipulated events occurred pre-petition.

[4] While the parties' "Agreed Facts," [Doc. #32], erroneously refer to the statutory sections under 11 U.S.C., the court takes judicial notice of the applicable exemptions to be under Ohio's state law, R.C. 2329.66 *et seq.*, as reflected in Debtor's Amended Schedule C where at Question 1, she indicated claiming state and nonfederal exemptions pursuant to 11 U.S.C. § 522(b)(3). [Doc. 44 at p. 10/13].

11. The Debtor testified that she purchased the 2017 BMW for transportation for her employment and family transportation needs.

12. The Debtor's Schedules I and J reflect monthly income of $3,514.72, contributions to 401(K) of $246.05, 401(k) loan payments of $122.33 with the Debtor's monthly income exceeding her monthly expenses by $600.46.

[Doc. # 32]. The parties also make the following stipulations:

A. Based upon further disclosure the Trustee agrees to withdraw his objection to the exemption of the Heritage Group 401K account, with the remaining objection being the Debtor's claim of exemption under 11 U.S.C. Section 2329.66(A)(10)(c)(e) as applied to the 2017 BMW.

B. The Parties agree that the BMW was purchased with funds traceable to the withdrawal of the $25,000.00 from the Heritage Group 401(k) account and subsequently deposited to the Key Bank account.

C. The Debtor has also elected to take the motor vehicle exemption pursuant to 11 U.S.C. Section 2329.66(A)(2) on the 2017 BMW and the Trustee does not object.

[*Id.*].

### III. LAW AND ANALYSIS

**A. Exemptions in General**

A principal purpose of bankruptcy is to afford the honest but unfortunate debtor a fresh start. Exemptions allow debtors to protect certain property from the claims of their creditors. *In re Frederick*, 495 B.R. 813, 816 (Bankr. N.D. Ohio 2013); 4 COLLIER ON BANKRUPTCY ¶ 522.01 (16th ed). They support the fresh start by: "(1) providing the debtor with that property which is necessary for their survival; (2) enabling the debtor to rehabilitate themselves; and (3) protecting the debtor's family from the adverse effects of impoverishment." *In re McVicker*, 546 B.R. 46, 60 (Bankr. N.D. Ohio 2016) (quoting *In re Felgner*, 2011 WL 5056994 at *2, 2011 Bankr. LEXIS 4118 at *4 (Bankr. N.D. Ohio 2011)). *See also In re Malsch*, 400 B.R. 584, 587 (Bankr. N.D. Ohio 2008). In Chapter 7 cases, exempt property is retained by the debtor and not subject to use or liquidation by the trustee to pay creditors.

States may choose to allow individual debtors to use the federal exemptions set forth in the Bankruptcy Code, 11 U.S.C. § 522, or the exemptions enacted under their state law. *Baumgart v. Alam (In re Alam)*, 359 B.R. 142, 147 (B.A.P. 6th Cir. 2006). The Ohio legislature opted out of the federal exemptions, requiring debtors domiciled in Ohio to claim exemptions under the appropriate Ohio statutes and under otherwise applicable non-bankruptcy federal law. *Id.* (citing R.C. 2329.66).

5

Ohio's statutory exemptions are generally to be liberally construed in favor of the debtor. *In re Wyman*, 626 B.R. 480, 489 (Bankr. S.D. Ohio 2021) (citing *Daugherty v. Cent. Trust Co. of Northeastern Ohio, N.A.,* 28 Ohio St.3d 441, 504 N.E.2d 1100, 1103 (1986); *In re Alam*, 359 B.R. at 147-48; *In re Wycuff*, 332 B.R. 297, 300 (Bankr. N.D. Ohio 2005)).

Determining whether an exemption should be allowed is made by considering the facts and circumstances of each case. *Hamo v. Wilson (In re Hamo)*, 233 B.R. 718, 723 (B.A.P. 6th Cir. 1999) (citations omitted). "There is a *prima facie* presumption that an exemption is proper." *In re Aubiel*, 534 B.R. 300, 304 (B.A.P. 6th Cir. 2015) (citation omitted). Where there is no objection to the claimed exemption, it is presumed to be valid. *In re Danduran*, 657 F.3d 749, 754 (8th Cir. 2011) (citing *In re Walters*, 450 B.R. 109 (B.A.P. 8th Cir. 2011); 9 COLLIER ON BANKRUPTCY ¶ 4003.04 (16th ed.)).

A party objecting to an exemption bears the burden of proof as to why the exemption is not properly claimed. Fed. R. Bankr. P. 4003(c). This means the objecting party has both the burden of production and burden of persuasion. *In re Carter*, 182 F.3d 1027, 1029 n.3 (9th Cir. 1999). In this case, where the parties have stipulated to the relevant facts, the burden falls upon the Trustee to show that under the preponderance of the undisputed facts the BMW is not exempt under the statutes cited by Debtor. *In re Alam*, 359 at 147 (citing *In re Hamo*, 233 B.R. at 712).

**B.    Legal Issues**

The Trustee disputes Debtor's reliance on R.C. 2329.66(A)(10)(b), (c) and (e) as they pertain to use of funds from Debtor's 401k retirement plan account. To be clear, the claimed exemptions at issue are in a car, Debtor's BMW, purchased approximately one year before she filed for bankruptcy relief. Apart from the exemption in the BMW claimed under R.C. 2329.66(A)(2), which is not in dispute, Debtor argues that the car is exempt because she bought it with exempt funds withdrawn from and traceable to the Heritage Account.

The threshold question is whether the claimed exemptions apply to the 401k plan account that was the source of the funds traced into the BMW and, if so, whether those funds retained their exempt status once withdrawn from Debtor's 401k plan account. If the source of the funds was not exempt then it does not matter that they are directly traceable into the BMW as the parties stipulate. If the source of the funds was exempt, the second question is whether they retained their exemption upon withdrawal from the 401k plan account. If the funds were exempt upon withdrawal, then the penultimate question is whether they retained their exempt status once transformed into a car.

6

**1. Were the Funds in the Heritage Account Exempt Under R.C. 2329.66(A)(10)(b), (c) or (e)?**

The court will first consider applicability of subparts (c) and (e), together, because they exempt different iterations of the same kind of tax advantaged retirement account.

The assets subject to exemption under R.C. 2329.66(A)(10)(c) are:

> [T]he person's rights or interests in the assets held in, or to directly or indirectly receive any payment or benefit under, any *individual retirement account, individual retirement annuity, "Roth IRA,"* account opened pursuant to a program administered by a state under section 529 or 529A of the "Internal Revenue Code of 1986,"100 State. 2085, 26 U.S.C. 1, as amended, or education individual retirement account that provides payments or benefits by reason of illness, disability, death, retirement, or age or provides payments or benefits for purposes of education or qualified disability expenses, to the extent that the assets, payments, or benefits described in division (A)(10)(c) of this section are attributable to or derived from any of the following or from any earnings, dividends, interest, appreciation, or gains on any of the following:
> (i) Contributions of the person that were less than equal to the applicable limits on deductible contributions to an individual retirement account or individual retirement annuity in the year that the contributions were made, whether or not the person was eligible to deduct the contributions on the person's federal tax return for the year in which the contributions were made;
> (ii) Contributions of the person that were less than equal to the applicable limits on contributions to a Roth IRA or education individual retirement account in the year that the contributions were made;
> (iii) Contributions of the person that are within the applicable limits on rollover contributions under subsections 219, 402(c), 403(a)(4), 403(b)(8), 408(b), 408(d)(3), 408A(c)(3)(B), 408A(d)(3), and 530(d)(5) of the "Internal Revenue Code of 1986," 100 Stat. 2085, 26 U.S.C.A. 1, as amended;
> (iv) Contributions by any person into any plan, fund, or account that is formed, created, or administered to, or is otherwise subject to, section 529 or 529A of the "Internal Revenue Code of 1986," 100 Stat. 2085, 26 U.S.C. 1, as amended.

R.C. 2329.66(A)(10)(c). (Emphasis added).

The assets subject to exemption under R.C. 2329.66(A)(10)(e) are:

> The person's rights to or interests in any assets held in, or to directly or indirectly receive any payment or benefit under, any *individual retirement account, individual retirement annuity, "Roth IRA,"* account opened pursuant to a program administered by a state under section 529 or 529A of the "Internal Revenue Code of 1986," 100 Stat. 2085, 26 U.S.C. 1, as amended or education individual retirement account *that a decedent, upon or by reason of the decedent's death, directly or indirectly left to or for the benefit of the person*, either outright or in trust or, including, but limited to, any of those rights or interests in assets or to receive payments or benefits that were transferred, conveyed, or otherwise transmitted by the decedent by means of a will, trust, exercise of a power of appointment, beneficiary designation, transfer or payment on death designation, or any other method or procedure.

R.C. 2329.66(A)(10)(e) (emphasis added).

The retirement benefits described in R.C. 2329.66(A)(10)(c) and (e) both pertain to individual retirement accounts, more commonly called IRAs.[5] *In re Mosby*, 532 B.R. 167, 169 (Bankr. D. Kan. 2015). *See also In re Hamo*, 233 B.R. at 722-23 (construing IRA exemption under Ohio Rev. Code § 2329.66(A)(10)(c)); *In re Yashura*, No. 11-30829, 2012 WL 847752 (N.D. Ohio 2012); *In re Malsch*, 400 B.R. at 588-90.

The difference between R.C. Sections 2329.66(A)(10)(c) and 2329.66(A)(10)(e) is that accounts to which subpart (A)(10)(e) applies derive from inheritance. That difference has been succinctly described as follows:

> Section 2329.66(A)(10)(c) exempts IRAs only when assets in, or payments or benefits under, such an account are payable by reason of illness, disability, death, retirement, or age. *Id*. Assets in an inherited IRA are, by definition, not payable by reason of illness, disability, death, retirement, or age . . . . Section 2329.66(A)(10)(c) makes no reference to a decedent; Section 2329.66(A)(10)(e) does. Section 2329.66(A)(10)(e) makes no reference to contributions; Section 2329.66(A)(10(c)(i)-(iv) all reference contributions, and Section 2329.66(A)(c)(10)(i)-(iii) are specifically restricted to contributions of "the" person. From this structure, the Court concludes that the retirement benefits owed or transferred to a debtor due to the death of a decedent are properly analyzed exclusively within the rubric of Section 2329.66.(A)(10)(e).

*In re Clark*, 601 B.R. 621, 624-25 (Bankr. N.D. Ohio 2019) (citations omitted).

The parties stipulate that the Debtor's claimed exemptions in the BMW stem from funds drawn from Debtor's 401k plan account, not from an IRA, inherited or otherwise. A 401k plan account and an IRA, inherited or otherwise, are legally distinct vehicles for accumulating tax advantaged retirement savings. The court finds that because the funds Debtor used to buy the BMW were from a 401k plan account and not from any form of IRA, as a matter of law R.C. Sections 2329.66(A)(10)(c) and (e) do not apply to the funds used to buy the car in the first place. *Stacy v. Gibson,* 140 N.E.3d 196, 208 (Ohio App. 2019) (as to R.C. 2329.66(A)(10)(c)). Any way one construes R.C. 2329.66(A)(10)(c) and (e), liberally or otherwise, Debtor's exemptions of the BMW under those sections of the Ohio Revised Code are disallowed.

In contrast to subparts (c) and (e) of R.C. 2329.66(A)(10), subpart (b) does apply to retirement benefits such as a 401k plan provided through private employers. R.C. 2329.66(A)(10)(b). *Stacy v.*

---

[5] Subpart (c) exempts "account[s] opened pursuant to a program administered by a state under section 529 or 529A of the "Internal Revenue Code of 1986,"100 State. 2085, 26 U.S.C. 1, as amended." That language does not describe Debtor's 401k plan account. Nor do the facts show that the 401k plan account is a rollover account as described in (A)(10)(c)(iii).

21-32107-maw    Doc 64    FILED 03/23/23    ENTERED 03/23/23 16:52:05    Page 8 of 16

*Gibson,* 140 N.E.2d at 208 (citing *In re Yashura*, 2012 WL 847752 at *3, and *In re Malsch*, 400 B.R. at 589). The assets subject to exemption under R.C. 2329.66(A)(10)(b) are:

> Except as provided in sections 3119.80, 3119.81, 3121.02, 3121.03, and 3123.06 of the Revised Code, *the person's rights to receive or interests in receiving a payment or other benefits under any pension, annuity, or similar plan or contract*, not including a payment or benefit from a stock bonus or profit-sharing plan or a payment included in division (A)(6)(b) or (10)(a) of this section, *on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the person and any of the person's dependents*, except if all the following apply:
>
> (i) The plan or contract was established by or under the auspices of an insider that employed the person at the time the person's rights or interests under the plan or contract arose.
>
> (ii) The payment is on account of age or length of service.
>
> (iii) The plan or contract is not qualified under the "Internal Revenue Code of 1986," 100 Stat. 2085, 26 U.S.C. 1, as amended.

R.C. 2329.66(A)(10)(b) (emphasis added).[6]

The Trustee agrees and the court finds that subpart (A)(10)(b) applies to Debtor's 401k plan Heritage Account and the funds held in it. [*See* Doc. # 36, p. 4/22]. He has withdrawn his objection to exemption of the Heritage Account under R.C. 2329.66(A)(10)(b). [Doc. # 32, p. 2/2, ¶ II.A.].

**2.  Were the Funds Exempt Under R.C. 2329.66(A)(10)(b) Upon Withdrawal?**

The Trustee objects to Debtor's exemption in the BMW under R.C. 2329.66(A)(10)(b) on the basis that the funds were not withdrawn from the Heritage Account on account of a permissible purpose under the statute (illness, disability, death, age, or length of service) and lost their exemption for that reason.

Debtor responds that the exemption applies because withdrawal of the funds was reasonably necessary for her support and her child's support within the plain language of the statute since, as the parties stipulate, she needed a reliable vehicle for work and basic family transportation.

The Trustee has the better of this legal argument based on the language of the statute. "[W]ords of a statute are to be construed in accordance with their ordinary and common meaning unless the context clearly requires otherwise." *In re Miller*, 427 B.R. 616, 619 (Bankr. N.D. Ohio 2009) (citing

---

[6] The exceptions in this provision of the statute do not apply to the Heritage Account or the funds withdrawn from it to buy the BMW.

*Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 388 (1997)). In construing Ohio statutes, the law of Ohio requires that, "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage." R.C. 1.42. Nor should the court ignore a provision lest it "offend[] the well-settled rule that all parts of a statute, if possible, are to be given effect." *In re Lombardy*, Case No. 11-17737, 2012 WL 435816 *4 (Bankr. N.D. Ohio 2012) (quoting *Fidelity Fed. Sav & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 163 (1982)).

This method of statutory construction was affirmed by the Ohio Supreme Court in the context of the Ohio exemption statutes in *Daugherty v. Central Trust Co. of Northeastern Ohio, N.A.*, 28 Ohio St.3d 441 (1986). The court addressed in *Daugherty* whether a debtor's exempt personal earnings retained their statutory exemption when deposited by her employer in a checking account. In making this determination, the Ohio Supreme Court criticized an Ohio appellate court decision, relied upon by the appellant, noting the appellate court "failed to analyze the language of R.C. 2329.66 in order to determine whether its protection would continue after the wages left the control of the employer." *Id*. at 444. Consistent with the directive from the Ohio Supreme Court in *Daugherty* and the law of statutory construction, the court starts with the language of the exemption statute.

The statute exempts a debtor's "rights to receive or interests in receiving a payment or other benefits under any pension, annuity, or similar plan or contract." The debtor in *In re Bresnahan*, 183 B.R. 506 (Bankr. S.D. Ohio 1995), sought to have his ongoing retirement income payments deemed exempt. The court in *In re Bresnahan* found the payments subject to the statute's protection of the "right to receive a payment under any pension, annuity, or similar plan or contract." *Id*. at 508. As the Ohio statute makes no distinction between payments owed or received, the term "payment" has been interpreted to include a withdrawal by a debtor. *In re Karn,* No. 13-62446, 2014 WL 3844829 *5 (Bankr. N.D. Ohio 2014)(citing *In re Wood*, 459 B.R. at 267). The court agrees with that interpretation as reasonable given the directive that Ohio exemptions are to be liberally construed in favor of a debtor.

Nevertheless, the court finds that the language of subpart (A)(10)(b) limits payments that will qualify for the exemption in two ways. First, the right to receive a payment, and by inference the payment, must be "on account of illness, disability, death, age or length of service." Second, the right to receive a payment, and by inference the payment, is exempt only "to the extent reasonably necessary for the support of the person [Debtor] and any of the person's dependents," to which the parties stipulate in this case. *See Stacy v. Gibson*, 140 N.E.3d at 209 ("[T]he funds at issue must first meet the definition of statutorily exempt. To be exempt under R.C. 2329.66(A)(10)(b), the 401(k) funds must have been

10

"reasonably necessary to support" Gibson or his dependents and received "on account of illness, disability, death, age or length of service.").

Debtor's emphasis on withdrawal of funds from the exempt Heritage Account as being reasonably necessary for support ignores altogether the first qualification on the right to receive the payment and by inference the payment. The stipulated facts show that the withdrawal had nothing to do with illness, disability, death, age or length of service. Under the 401k plan, Debtor apparently had the ability to access the funds in the exempt account for reasons other than on account of illness, disability, death, age or length of service subject to payment of applicable taxes on the withdrawal, as the parties stipulate that she did. She received a distribution from her Heritage Account in the amount of $25,000, with $2,500 of the withdrawal designated to pay the resulting tax liability. That she was able to access the otherwise exempt 401k plan funds for reasons other than on account of illness, disability, death, age or length of service and did so does not mean that the account exemption applies to the payment. A liberal construction of the statute does not countenance disregard of a chunk of the language of the statute to strain or enlarge its meaning. *In re Slane*, 537 B.R. 864, 866 (Bankr. N.D. Ohio 2015).

The plain language of subpart (A)(10)(b) is reinforced by its legislative purpose. The purpose of retirement exemptions "is not immediate consumption, but instead to encourage debtors to save for retirement." *In re Karn* 2014 WL 3844829 *6 (citing *In re Malsch*, 400 B.R. at 590). While *Karn* dealt with funds from an IRA, that purpose applies equally to 401k plan funds because they are also retirement funds in which the:

> legislative policy is furthered if the exemption is available only for funds withdrawn from a retirement account during retirement, or *before retirement if the funds are used in a manner reasonably certain to benefit the debtor in retirement*.

*Id*. (Emphasis added).

For example, the debtor in *In re Bresnahan* was a retired civilian employee of the United States Air Force. He received an annual payment from the Air Force, of which $7,000 remained in his checking account when he filed for bankruptcy. Debtor claimed the $7,000 as exempt under R.C. 2329.66(A)(10)(b) as a payment received from a pension. Testimony established that the $7,000 balance of his retirement income was reasonably necessary for his support and his spouse's support in retirement. 183 B.R. at 508. In *In re Bresnahan*, both conditions to exemption of the payments he received were satisfied.

In contrast, in *In re Roberts*, 326 B.R. 424, 426 (Bankr. S.D. Ohio 2004), the trustee objected to an exemption of a debtor's pledge of certain stocks in his IRA account as collateral for a financing

11

package. The court found that the pledge amounted to a distribution contrary to the general policy behind the exemption of protecting a debtor's future income stream upon retirement.

The Trustee argues and the stipulated facts show, as in *In re Roberts,* that Debtor did not withdraw funds from the Heritage Account for a retirement purpose. The parties stipulate that Debtor is steadily employed, just 41 years of age, in good health, and has no intention of retiring at this time. The parties further agree that Debtor's monthly net income after expenses is $600.46. These undisputed facts do not comport with use of funds in a manner reasonably certain to benefit Debtor in retirement. *In re Karn* 2014 WL 3844829 *6 (noting "[s]uch policy would be frustrated if debtor could withdraw funds from an IRA to pay for nonretirement expenses, and then turn around and claim any remaining funds as exempt").

The court finds that Debtor's exemption of the BMW under R.C. 2329.66(A)(10)(b) is disallowed as a matter of law because the funds used to buy it, while received from and traceable to an exempt account, were not withdrawn on account of illness, disability, death, age or length of service, regardless of whether they were otherwise reasonably necessary for her support as the parties agree.

**3.      Does the Exemption of the Heritage Account Follow Into the BMW?**

The court is of the opinion that its analysis is finished because the funds used to buy the BMW were not withdrawn from the Heritage Account on account of illness, disability, death, age or length of service as required by R.C. 2329.66(A)(10)(b). Nevertheless, the logical end of Debtor's argument is that finding does not matter, because the exemption in the 401k plan account can still be traced directly into the Key Bank checking account and from there into the BMW. The parties stipulate to those facts. It is traceability that matters in Debtor's reading of the statute and applicable precedents. The Trustee argues otherwise. Debtor's theory of the statute raises the question how far does the exemption go? Perhaps the penultimate in liberal exemption construction. One step from the 401k account? Two steps from the 401k account? More? Does the statute admit of a limit?

The Ohio Supreme Court in *Daugherty* addressed deposit of personal earnings exempt under Ohio law into a checking account. It held that "consistent with the language of R.C. 2329.66(A)…exempt funds do not lose their exempt status when deposited in a personal checking account." *Daugherty*, 28 Ohio St. 3d at 445. Such funds "retain their exempt status when deposited in a personal checking account, so long as the source of the exempt funds is known or reasonably traceable." *Id.* In so deciding, it interpreted the Ohio statute's language and applied three United States Supreme Court cases involving deposit of amounts exempt under federal statutes into bank accounts of various types. As the legislative purpose of the Ohio exemption in personal earnings, consistent with the

12

language of the statute, was to "protect funds intended primarily for maintenance and support of the debtor's family," the Ohio Supreme Court found that purpose "would be frustrated if exempt funds were automatically deprived of their statutory immunity when deposited in a checking account which a depositor commonly maintains in order to pay by check those regular subsistence expenses he incurs." *Id*. Thus, *Daugherty* stands for the proposition that exempt funds do not automatically lose their exemption when deposited into another account.[7] If the exemption at issue in this case was in Debtor's Key Bank checking account, *Daugherty* would control. *See, e.g., In re Neff*, Case No. 12-31328, 2012 WL 3063141, *1-*2 (Bankr. N.D. Ohio 2012) (Whipple, J.). Indeed Debtor's written response to the Trustee's objection blurs the real issue, stating that "the $19,508.00 utilized by debtor for the 2017 BMW purchase should be considered as fully exempt." The exemption in dispute is not claimed in funds or in a bank account, but in a car.

Debtor relies on the decision of another judge of this court in *In re Greer*, Case No. 16-11242, 2016 WL 4260077 (Bankr. N.D. Ohio 2016) (Harris, J.). In *In re Greer*, Debtors claimed amounts in their checking account as exempt. The funds in the checking account were from deposits of the debtors' pension and social security benefits. The trustee objected to their exemption of the checking account. He did not contest that pension and social security benefits deposited in the account were exempt. But there were also non-exempt funds deposited into the checking account and comingled with the exempt deposits. The court concluded that because of the comingling and withdrawals preceding the bankruptcy filing, tracing of the deposits and withdrawals was necessary to determine what amount in the account was exempt at filing. It decided on the lower intermediate balance test among other potential methods to trace the funds in the checking account.

The case *In re Greer* does not advance Debtor's position. Rather, *In re Greer* is an application of *Daugherty's* holding that exempt funds deposited in an account retain their exempt status "so long as the source of the exempt funds [in the account] is known or reasonably traceable." The court in that case adopts a method of tracing. Tracing is not the issue in this case. The parties stipulate to traceability. The issue is instead whether the holding of *Daugherty* extends one step further to a car acquired with traceable exempt funds. The court's decision in *In re Greer* says nothing about that.

---

[7] Some cases after *Daugherty* suggested that it applies only if the exempt funds were deposited into a checking account and not into another type of account, such as a savings account. *E.g., Grant Hosp. v. O'Nail,* 1997 WL 101657 at *2 (Ohio App. 10th Dist. 1997). But another Ohio Supreme Court case after *Daugherty,* which involved tracing a state prisoner's exempt pension funds through two accounts, only one of which was a checking account, casts doubt on the type of account as a viable limitation on the holding in *Daugherty*. *State ex. rel. Williams v. Trim,* 145 Ohio St. 3d 204 (2015).

13

The Trustee's argument does offer a limit to the holding in *Daugherty*, namely that when liquid exempt funds are transformed into illiquid form, the exemption no longer applies in the illiquid asset. His argument finds some support in *In re Alam*. In considering whether settlement payments resulting from a debtor's claim against a disability insurance carrier retained their exempt status under Ohio law after deposit into the debtor's bank accounts, the court applied a liquidity test. *In re Alam*, 359 B.R. at 150-51. The panel in *Alam* examined several decisions of the United States Supreme Court and of the Ohio Supreme Court, observing in *dicta* that:

> As Justice Douglas stated in *Philpott*, ultimately the test is liquidity. As the series of transactions stipulated by the parties shows, the funds remain liquid. On the other hand, had the funds been converted into land or buildings, for example, they clearly would have lost their exempt status under this test. *See Carrier v. Bryant*, 306 U.S. 545, 549, 59 S.Ct. 707, 709, 83 L.Ed.976 (1939).

*Id. See also In re Karn*, 2014 WL 3844829 at *7 (agreeing that liquidity as to the method of storage controls); *Canton Student Loan Foundation v. Mayo,* 2008 WL 1970023 (Ohio Ct. App. 5th Dist. 2008) (Social Security money is exempt from garnishment if held in a bank account. But once it is spent, it loses its exempt status). *Cf. Trotter v. Tennessee*, 290 U.S. 354 (1933) (exemption from taxation of veteran act payments by a state ended when they lost the quality of moneys and were converted into land and buildings).

The court looks to and finds in *Daugherty* support for this limitation. Specifically, footnote 3 in *Daugherty* predicts what the Ohio Supreme Court would do if confronted with this case. Footnote 3 is placed after the Ohio Supreme Court's requirement that the source of the funds in an account claimed as exempt be known or reasonably traceable and states in relevant part:

> Additionally, we note that appellee's funds on deposit in her checking account retain their exemption because they meet the test set forth in *Porter v. Aetna Cas. & Sur. Co.* (1962), 370 U.S. 159, 162, 82 S.Ct. 1231, 1233, 8 L.Ed.2d 407. Appellee's funds were "readily available as needed for support and maintenance," retained their quality as monies and were not converted into a permanent investment.

28 Ohio St. 3d at 445.

The Ohio Supreme Court in *Daugherty* having relied on and cited with approval the United States Supreme Court's decision in *Porter*, both in the body of its opinion and in footnote 3, the court believes it would do so in deciding whether Debtor is entitled to claim her car exempt under R.C. 2329.66(A)(10)(b). The issue in *Porter* was whether exempt veteran's disability benefits retained their exemption once deposited in accounts in a federal savings and loan association. Interpreting cases from

14

21-32107-maw    Doc 64    FILED 03/23/23    ENTERED 03/23/23 16:52:05    Page 14 of 16

1937 and 1939, the United States Supreme Court settled on the proviso highlighted by the Ohio Supreme Court in footnote 3 in *Daugherty* that that deposited funds must be readily available as needed for support and maintenance, retained their quality as money and have not been converted into permanent investments.

By analogy in this case, where the legislative purpose of the exemption at issue was to preserve resources for basic needs in retirement, as in *In re Bresnahan*, transforming exempt funds into a BMW as an illiquid asset held by a Debtor other than on account of illness, disability, death, age or length of service severs the exemption in the original funds. Debtor's position goes too far based on the facts of this case because it actually disregards the purpose of the exemption. In contrast to the VA benefits in *Porter* and the exempt personal earnings in *Daugherty*, Debtor was not safekeeping her 401k benefits in the BMW in the event of her illness, death, age, disability or length of service.

If viable, Debtor's position offers a path to eviscerate the letter and the purpose of the Ohio legislature's statutory exemption structure, which this court believes the Ohio Supreme Court would not countenance despite its directive that exemption statutes are to be liberally construed. *See In re Christensen*, 122 Nev. 1309, 1321-24, 149 P.3d 40, 48-49 (2006) (interpreting Nevada exemption statutes on certification from bankruptcy court, the Nevada Supreme Court stated that "property which in itself is not statutorily exempt from execution does not acquire an exempt character because it is purchased with the proceeds of exempt earnings."). The list of exemptions in R.C. 2329.66 includes specific types of real and personal property and applicable dollar limits in some instances. There is a colloquially named, stackable "wildcard" exemption allowing a specific dollar amount to be claimed in any property. The statutory list is a legislative determination of types and values of property that Ohio debtors are allowed to maintain a basic standard of living in or out of bankruptcy, notwithstanding unpaid creditors. In this case, Debtor also claimed the full dollar amount of an exemption in the BMW under R.C. 2329.66(A)(2) specifically addressing motor vehicles to which the Trustee does not object. Also allowing Debtor to claim an exemption for retirement account funds and payments in a car is impermissible as a matter of Ohio law.

## IV. CONCLUSION

For the reasons and based on the authorities stated above, the court will sustain the Trustee's objections to Debtor's exemptions in her 2017 BMWi3 as claimed under Ohio Rev. Code § 2329.66(A)(10)(b), (c) and (e). Debtor's claim of exemptions in her 2017 BMWi3 will be allowed only under Ohio Rev. Code § 2329.66(A)(2), the Trustee having withdrawn any objection thereto. Debtor's

15

exemption in the Heritage Group Retirement Account will be allowed under Ohio Rev. Code § 2329.66(A)(10)(b), the Trustee having withdrawn any objection thereto.

A separate order implementing this decision will be entered by the court.

###